**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
LEDIA PEREZ, ALBERTO GONZALEZ,
HUMBERTO PEREZ and MURO ALI, *individually*
*and on behalf of others similarly situated,*

                *Plaintiffs,*

               -against-

PLATINUM PLAZA 400 CLEANERS, INC. (d/b/a
SPLENDID CLEANERS), PLATINUM STAR
ENTERPRISES LLC (d/b/a SPLENDID CLEANERS),
and DAISY HUANG

                *Defendants.*
-----------------------------------------------------------------X

Docket No.: 12-cv-9353
(PAC)

## PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

     Plaintiffs Ledia Perez, Alberto Gonzalez, Humberto Perez, Juana Guzman, and Muro Ali, by their attorneys Michael Faillace & Associates, P.C., submit the following proposed findings of fact and conclusion of law.

### Findings of Fact

     1.    Plaintiffs filed the present action in the United States District Court for the Southern District of New York on December 21, 2012.

     2.    Defendants were each timely served with the Complaint.

     3.    Defendants Platinum Plaza 400 Cleaners, Inc. (d/b/a Splendid Cleaners) and Platinum Star Enterprises LLC (d/b/a Splendid Cleaners) own and operate a chain of dry cleaners/laundromats located in Manhattan, including at 409 East 55th Street, New York, New York, 414 East 58th Street, New York, New York 10022, and 552 Hudson Street, New York, New York 10014.

4.       Defendant Daisy Huang is the owner and principal of Platinum Plaza 400 Cleaners, Inc. (d/b/a Splendid Cleaners) and Platinum Star Enterprises LLC (d/b/a Splendid Cleaners).

5.       Platinum Plaza 400 Cleaners, Inc. (d/b/a Splendid Cleaners) and Platinum Star Enterprises LLC (d/b/a Splendid Cleaners had gross annual sales exceeding $500,000 during the time period relevant to the plaintiff's claims pursuant to the Fair Labor Standards Act.

6.       Daisy Huang determined the pay of Plaintiffs.

7.       All Plaintiffs were paid by cash, and on a bi-weekly basis.

8.       Until approximately January 25, 2010, Defendants did not keep any records of the hours Plaintiffs worked or the pay they received.

9.       Beginning on or about January 25, 2010, Defendants kept handwritten records of the Plaintiffs' start times, end times, and break times, and handwritten documents showing how much Plaintiffs were paid on a bi-weekly basis.

Plaintiff Ledia Perez

10.     Plaintiff Ledia Perez was employed by Defendants from May 2008 until October 3, 2012, as a clothes washer, packer, ironer, and retoucher.

11.     From approximately May 2008 through January 2010, Plaintiff Ledia Perez worked a schedule of 7:00 a.m. to 6:00 p.m. Mondays through Fridays; from 10:00 a.m. to 3:00 p.m. on Saturdays (typically 60 hours per week).

12.     Every other Friday, Ledia Perez was required to stay at Splendid Cleaners an additional two hours in order to receive her pay.

13. Beginning on or about February 8, 2010, Ledia Perez's daily hours worked and break times were records in a handwritten document. These records are accurate for the times they cover. (Plaintiffs' Ex. 7)

14. Throughout her employment, Ledia Perez was paid a salary bi-weekly, in cash.

15. From approximately May 2008 until approximately February 2010, Plaintiff Ledia Perez was paid $400.00 per week.

16. From approximately February 2010 until October 2012, Plaintiff Ledia Perez was regularly paid $430 per week. Occasionally she would have one day off in a week, and would be paid $344 for those weeks.

17. Prior to approximately January 2010, Plaintiff Ledia Perez was not required to keep track of her time, nor did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.

18. Defendants did not provide Plaintiff Ledia Perez with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked.

19. Defendants did not provide Ledia Perez with any notification, either in the form of posted notices, or other means, regarding wages as required under the FLSA and NYLL.

20. Defendants did not provide Ledia Perez with a wage statement together with each payment of wages.

Plaintiff Alberto Gonzalez

21. Alberto Gonzalez was employed by Defendants from June 2009 until November 15, 2013, as a delivery person and packer.

22. From approximately June 2009 until January 25, 2010, Alberto Gonzalez regularly worked a schedule from 7:30 a.m. to 7:00 p.m. Mondays through Fridays, and from 8:00 a.m. to 5:00 p.m. on Saturdays (typically 66.5 hours per week). Every other Friday, Gonzalez was required to wait at Splendid Cleaners for approximately two hours in order to receive his bi-weekly pay.

23. Since on or about January 25, 2010, Alberto Gonzalez's hours worked were recorded in a handwritten document which accurately reflects the hours he worked. (Plaintiffs' Ex. 5)

24. However, the handwritten documents did not record that Gonzalez was required to stay at Splendid Cleaners for approximately two hours every other Friday to wait to receive his bi-weekly pay.

25. Defendants did not provide any records of Gonzalez's hours worked after December 17, 2012. From December 18, 2012 until the end of his employment in approximately November 15, 2013, Gonzalez typically worked from approximately 8:00 a.m. to 6:00 p.m. Mondays through Fridays, and from approximately 10:00 a.m. to 5:00 p.m. on Saturdays.

26. Throughout his employment, Gonzalez was paid in cash, on a bi-weekly basis.

27. Gonzalez was paid $400.00 per week through December 17, 2012 and $460 per week thereafter.

28. Until on or about January 25, 2010, Gonzalez was not required to keep track of his time, nor did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

29. Defendant did not provide Gonzalez with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

30. Defendants did not provide any notification, either in the form of posted notices, or other means, to Gonzalez regarding wages as required under the FLSA and NYLL.

31. Defendants did not provide Gonzalez with a statement of wages together with each payment of salary.

Juana Guzman

32. Plaintiff Juana Guzman was employed by Defendants from February 13, 2012 until October 20, 2012, as a shirt ironer.

33. Throughout her employment, Guzman's hours worked were accurately recorded in a handwritten documents which recorded her start, end, and break times each day. (P. Ex. 10) However, the handwritten documents did not record that Guzman was required to stay at Splendid Cleaners for approximately two hours every other Friday to wait to receive her bi-weekly pay.

34. Throughout her employment, Guzman was paid her salary in cash, on a bi-weekly basis.

35. Throughout her employment, Guzman was paid $320.00 per week.

36. Defendants did not provide Plaintiff Guzman with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked.

37. Defendants did not provide Plaintiff Guzman with any notification, either in the form of posted notices, or other means, regarding wages as required under the FLSA and NYLL.

5

Humberto Perez

38.     Plaintiff Humberto Perez was employed by Defendants from June 2009 until October 20, 2012, to organize clothing, pack clothing, and retouch shirts.

39.     From the start of his employment until January 2010, Humberto Perez regularly worked from approximately 7:00 a.m. to 5:00 p.m. Mondays through Fridays (typically 50 hours per week).  Every two weeks, Perez was required to stay at Splendid Cleaners approximately two hours more, in order to receive his bi-weekly pay.

40.     From on or about January 25, 2010 to the end of his employment, Humberto Perez's hours were accurately recorded in a handwritten document.  (P. Ex. 9)  However, the document did not record that Humberto Perez was required to wait approximately two hours each week to receive his pay.

41.     Throughout his employment, Humberto Perez received his salary in cash on a bi-weekly basis.

42.     Throughout his employment, Humberto Perez was paid $400 per week.

43.     Prior to January 2010, Humberto Perez was not required to keep track of his time, nor did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

44.     Defendants did not provide Humberto Perez with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

45.     Defendants never provided Humberto Perez with any notification, either in the form of posted notices, or other means, regarding wages as required under the FLSA and NYLL.

46.     Defendants never provided Humberto Perez with any statement of wages, together with his salary.

Muro Ali

47.     Plaintiff Muro Ali was employed by Defendants from May 2007 to December 2007, and from December 2008 until April 20, 2013, as a packer and delivery person.

48.     From approximately May 2007 until December 2007, Muro Ali typically worked from 7:30 a.m. to 6:30 p.m. on Mondays and Fridays, and from 9:00 a.m. to 5:00 p.m on Saturdays, with a 30 minute break each day (typically 60 hours per week).

49.     From approximately December 2008 until June 2011, Muro Ali typically worked from 7:30 a.m. to 7:00 p.m. Monday through Friday, and 9:00 a.m. to 5:00 p.m. Saturday, with no scheduled breaks (typically 64.5 hours per week).

50.     From approximately July 2011 until April 2013, Muro Ali worked from 8:00 a.m. to 7:00 p.m. Monday through Friday and from 9:00 a.m. to 5:00 p.m. on Saturday, with no scheduled breaks (typically 63 hours per week).

51.     Throughout his employment, Ali was paid his wages in cash, on a biweekly basis.

52.     Throughout his employment, Ali was paid $400 per week.

53.     Prior to approximately December 2012, Ali was not required to keep track of his time, nor, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

54.     After approximately December 2012, Defendants required Ali to enter a code into a computer when he starts and finishes work.  However, the computer sometimes does not record the correct time.

55.     Defendants never produced records of Ali's time worked.

56. Defendants did not provide Ali with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

57. Defendants did not provide Ali with any notification, either in the form of posted notices, or other means, regarding wages as required under the FLSA and NYLL.

58. Defendants did not provide Ali with a wage statement together with each payment of wages.

## Conclusions of Law

1. Plaintiffs' employment at Defendants was covered by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").   29 U.S.C. § 203.

2. Under the FLSA, the minimum wage rate at all times relevant to Plaintiffs' claims under the FLSA in this action was $7.25 per hour.  29 U.S.C. §206(a)(1).

3. The New York minimum wage rate was $7.15 per hour as of January 1, 2007. N.Y. Labor Law § 652(1).

4. Since July 24, 2009 until December 31, 2013 the New York minimum wage rate was the same as the FLSA rate, $7.25.  *Id.*

5. The FLSA and NYLL both require that covered employees be paid one-and-a-half times their regular rate for each hour worked over forty hours in a week.  29 U.S.C. §207(a)(1); 12 N.Y.C.R.R. § 142-2.2.

6. Overtime pay is calculated by applying a multiplier of one and one half to an employee's "regular rate" of pay. 29 C.F.R. § 778.107; 29 U.S.C. § 207(a)(1).

7. The regular rate of pay "is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually

worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; 29 U.S.C. § 207(e).

8. Under the FLSA, there is a rebuttable presumption that when an employee is paid a set weekly salary, rather than an hourly wage, the salary is intended to cover 40 hours per week. Therefore, under the FLSA the regular rate should be determined by dividing the weekly salary rate by 40 hours, rather than by the number of hours actually worked. *Guallpa v. NY Pro Signs Inc.*, Index No. 11-cv-3133(LGS), 2014 U.S. Dist. LEXIS 77033, *9-*10 (S.D.N.Y. May 27, 2014); *Moon v. Kwon*, 248 F.Supp.2d 201, 207-08 (S.D.N.Y. 2002); *Giles v. City of New York*, 41 F.Supp.2d 308, 317 (S.D.N.Y. 1999); *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 385 (E.D.N.Y. 2012).

9. New York's spread of hours law requires employers to pay workers for an additional hour of minimum wage rate pay beyond their regular pay when the workday is more than ten (10) hours. 12 N.Y.C.R.R. § 142-2.19; see also 12 NYCRR§137-1.7.

10. The statute of limitations for minimum wage and overtime claims under the FLSA is two years, but when the underpayment is willful, the limitations period increases to three years. 29 U.S.C. §255(a).

11. Under both FLSA and New York Labor Law, a violation is considered willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir 2009) (quoting *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988)); *Moon v. Kwon*, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002) (NYLL test for willfulness same as test under FLSA).

12. The testimony established that Defendants' violations of the FLSA and NYLL minimum wage and overtime provisions were willful. Accordingly, the statute of limitations for Plaintiffs' FLSA claims is three years, and all acts since December 21, 2009 (three years before the filing of the Complaint) are subject to the FLSA. 29 U.S.C. §255.

13. Under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness. N.Y. Labor Law § 663(3).

14. Defendants violated the overtime provisions of the FLSA and NYLL by failing to pay Plaintiffs at the overtime rate of 1.5 times the regular rate for all hours worked above 40 per week.

15. Defendants have not rebutted the presumption that the salaries paid to Plaintiffs were interceded to compensate Plaintiffs for 40 hours worked. Accordingly, the Plaintiffs' regular rates of pay are determined by dividing their weekly salary by 40 hours per week. To determine the overtime rate, the regular rate is multiplied by 1.5. To determine the unpaid overtime, the overtime rate is multiplied by the numbers of hours worked above 40 in a week.

16. Plaintiffs are entitled to unpaid overtime wages as follows (Appendix A):

   A. Ledia Perez — $27,892.43

   B. Alberto Gonzalez — $47,787.30

   C. Humberto Perez — $10,683.30

   D. Muro Ali — $81,330.00

17. Plaintiffs frequently worked more than 10 hours each day, but did not receive additional pay as required under the NYLL "spread of hours" law. Plaintiffs are entitled to spread of hours compensation as follows (Appendix A):

   A. Ledia Perez —   $3,767.00

10

      B.  Alberto Gonzalez — $5,498.55

      C.  Humberto Perez — $558.25

      D.  Juana Guzman — $123.25

      E.  Muro Ali — $8,212.25

18. An employer who violates the FLSA's overtime requirements is generally liable to its employee for the employee's "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). But, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission" did not violate the FLSA, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof" not to exceed 100% of actual damages. 29 U.S.C. § 260.

19. Prior to November 24, 2009, liquidated damages under the New York Labor Law were awarded if the employee proved the employer's violation were willful. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011), citing NYLL §198-1. Since November 24, 2009, the New York Labor Law provided for an award of 25% liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." *Id.* Effective April 9, 2011, New York provides for liquidated damages of 100%. NYLL § 663(1).

20. Defendants have not met their burden of proving that their violations of the FLSA and NYLL were not in good faith, and Plaintiffs have proven that Defendants' violation were willful. Accordingly, Plaintiffs are entitled to liquidated damages at the rate of 25% of the unpaid wages until December 21, 2009 (the start of the FLSA period), 125% of the unpaid wages from December 22, 2009 to April 8, 2011, and 200% from April 9, 2011 until the end of their employment. The total amount of liquidated damages Plaintiffs are entitled to on back pay are:

    A. Ledia Perez — $10,215.01

    B. Alberto Gonzalez — $75,999.23

    C. Humberto Perez — $12,697.88

    D. Muro Ali — $109,188.75

21.    Plaintiffs are also entitled under the NYLL to liquidated damages at the rate of 25% for unpaid "spread of hours" pay, and at the rate of 100% after April 9, 2011. The total amount of liquidated damages Plaintiffs are entitled to on spread of hours pay is:

    A. Ledia Perez — $1,104.88

    B. Alberto Gonzalez — $2,309.89

    C. Humberto Perez — $340.75

    D. Juana Guzman — $123.25

    E. Muro Ali — $4,907.75

22.    Plaintiffs are also entitled to prejudgment interest on his New York Labor Law claims. Under New York law, the court may award prejudgment interest pursuant to N.Y. C.P.L.R. § 5001 on an award of back pay. *See McLean*, 2012 U.S. Dist. LEXIS 55425, at *27 ("courts typically award prejudgment interest on damages for NYLL violations"); *Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469, 485-86 (S.D.N.Y. 2001); *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 176 Misc. 2d 325, 336 (Sup. Ct. N.Y. County 1997). In addition, under New York law, prejudgment interest can be awarded in addition to liquidated damages. This is so because under New York law liquidated damages are considered a penalty, serving a different purpose as a sanction for willfully failing to pay wages. *Carter v. Frito-Lay, Inc.*, 425 N.Y.S. 2d 115, 115 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981). Under

N.Y. C.P.L.R. § 5004, prejudgment interest runs at the rate of nine percent (9%) per annum simple interest.

23. Plaintiffs are entitled to prejudgment interest for unpaid overtime and unpaid "spread of hours" pay under the NYLL, in the following amounts:

    A. Ledia Perez — $15,105.35

    B. Alberto Gonzalez — $7,072.09

    C. Humberto Perez — $2,215.30

    D. Juana Guzman — $29.14

    E. Muro Ali — $12,891.48

24. Plaintiffs are entitled to damages for Defendants' failure to provide annual wage notices, in violation of NYLL § 195(1). They are entitled to $50 per week, up to a total of $2,500. NYLL §198(1-b). *See Cuzco v. F.J. Steaks 37th St., LLC*, Index No. 13-cv-1859 (PAC), 2014 U.S. Dist. LEXIS 72984 (S.D.N.Y. May 28, 2014) (private right of action for existing employees not provided notice). The damages Plaintiffs are entitled to are:

    A. Ledia Perez — $2,500.00

    B. Alberto Gonzalez — $2,500.00

    C. Humberto Perez — $2,500.00

    D. Juana Guzman — $1,250.00

    E. Muro Ali — $2,500.00

25. Plaintiffs are also entitled to damages for Defendants' failure to provide wage statements with each payment of wages, in violation of NYLL§ 195(3). Plaintiffs are entitled to

$100 per week of violation, up to a maximum of $2,500 each.  NYLL §198(1-d).  Each plaintiff is entitled to $2,500 in damages.

26.     The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages.  29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").  Accordingly, Plaintiffs should be awarded attorneys' fees and costs.

Dated: New York, New York
       January 12, 2015

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     ___/s/ Joshua S. Androphy___
        Michael Faillace
        Joshua S. Androphy
        60 East 42nd Street, Suite 2020
        New York, New York 10165
        (212) 317-1200
        *Attorneys for Plaintiffs*