UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 24, 2015
```

---------------------------------------------------------X
                        :

LEDIA PEREZ, ALBERTO GONZALEZ,  :
HUMBERTO PEREZ, and ALI MURO,    :
                         :

          *Plaintiffs*,      :
                         :

   -against-           :       12 Civ. 9353 (PAC)
                         :

PLATINUM PLAZA 400 CLEANERS, INC.  :
(d/b/a SPLENDID CLEANERS),      :     **OPINION & ORDER**
PLATINUM STAR ENTERPRISES LLC   :
(d/b/a SPLENDID CLEANERS), and DAISY :
HUANG,                    :

        *Defendants*.    :
                         :

---------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

On January 20, 2015, the Court held a bench trial in this wage-and-hour matter in which Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs Ledia Perez ("L. Perez"), Alberto Gonzalez ("Gonzalez"), Humberto Perez ("H. Perez"), and Ali Muro ("Muro")[1] (collectively, "Plaintiffs") each testified, as did Jessie Wu, the manager of Splendid Cleaners. Subsequently, the parties submitted proposed findings of fact and conclusions of law, as well as proposed damages calculations. The Court finds for Plaintiffs and awards damages in the amounts indicated below.

---
[1] Although this individual is referred to as "Muro Ali" in the pleadings and pre-trial papers, Plaintiffs' counsel stated on the record at trial that the correct name is "Ali Muro." Tr. 24:21-25:7.

## I. Background

Plaintiffs are former employees of Defendants Platinum Plaza 400 Cleaners, Inc., Platinum Star Enterprises LLC (collectively, d/b/a Splendid Cleaners), and Daisy Huang, the owner of Splendid Cleaners (collectively, "Defendants"). Stipulated Facts ¶¶ 3-10. Splendid Cleaners owns and operates several full service dry cleaners and laundromats, with locations at 409 East 55th Street, 414 East 58th Street, and 552 Hudson Street in New York. *Id.* ¶ 4. Ledia Perez worked for Defendants washing, packing, ironing, and retouching clothes from 2008 until October 3, 2012. *Id.* ¶ 7. Alberto Gonzalez worked for Defendants as a delivery person and packer from June 2009 until November 15, 2013. *Id.* ¶ 8. Humberto Perez worked for Defendants organizing, packing, and retouching clothing from 2009 until October 20, 2012. *Id.* ¶ 9. Ali Muro worked as a clothing packer and delivery person from May 2007 until December 2007 and then again from December 2008 until April 20, 2013. *Id.* ¶ 10.

Plaintiffs were paid in cash. *Id.* ¶ 11. Starting January 25, 2010, Defendants kept handwritten records of Plaintiffs' hours. *Id.* ¶ 12. Where records exist, Plaintiffs have calculated their damages based on the hours recorded. Androphy Decl. ¶¶ 3-4. For periods for which there are no records, Plaintiffs have calculated damages based on unrefuted testimony. *Id.* ¶¶ 5-9.

Ledia Perez was paid $400 per week until approximately early 2010,[2] when she was paid $430 per week. Stipulated Facts ¶ 13. At trial, she testified that her recorded start times were not accurate because Defendants required her to arrive thirty minutes early to turn on the cleaning machines. Tr. 51:18-20, 52:1-16, 57:4-13).[3] Humberto Perez was paid $400 per week.

---

[2] The parties dispute when this change occurred. Stipulated Facts ¶ 13. Because Defendants failed to keep adequate records, the Court accepts Plaintiffs' version of events on this issue.

[3] The Court found this testimony credible and accordingly accepts Plaintiffs' calculation of L. Perez's damages, which include an additional half-hour for each workday.

2

*Id.* ¶ 14. Alberto Gonzalez was paid $400 per week from June 6, 2009 through December 17, 2012 and $460 thereafter. *Id.* ¶ 15. Ali Muro was paid $400 per week. *Id.* ¶ 16.

In pre-trial papers and at trial, Plaintiffs argued that they were forced to wait an extra two hours every other Friday to receive their pay, for which they received no compensation. Pl. Pre-Trial Mem. ¶¶ 12, 22, 40, Tr. 42:17-23. At trial, the Court granted Defendants' motion to strike that portion of the claim, finding that there was no productive work being done at that time and that the delay was for the convenience of the plaintiffs and not the defendants. Tr. 95:9-19.

During his testimony, Muro argued that the records of his hours were incorrect. Tr. 28:23-29:20, 33:24-34:24, 34:7-18, 35:10-22, 38:9-40:5. The Court overruled these objections, finding that the records were accurate. Tr. 96:5-14.

In 2010, a consent judgment was entered against Defendants for previous wage and hour violations. *See Solis v. Platinum First Cleaners et al.*, 10 Civ. 9415. The consent judgment includes a list of employees owed money pursuant to the judgment, and states that the order does not affect the ability of employees not listed to recover for any violations, or the ability of listed employees to recover for subsequent violations after December 5, 2009. *Id.* at 7.[4]

## II.   Conclusions of Law and Damages Calculations

### A.  Regular Rate of Pay and Actual Damages

Under the FLSA and the NYLL, all employers must compensate employees for hours worked over forty hours per week at a rate not less than 1.5 times the regular rate of pay. 29 U.S.C. § 207(a)(1); N.Y. Lab. Law § 663(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

---

[4] Defendants' arguments regarding the impact of the consent judgment on Plaintiffs' damages are unavailing. *See* Def. Mem. at 3. Plaintiffs have calculated their damages in accordance with the consent judgment's limitations. L. Perez, H. Perez, and Muro's damages are calculated based on damages accrued after December 5, 2009. Alberto Gonzalez is the only plaintiff recovering money prior to December 5, 2009, as he is the only plaintiff not listed on Schedule A of the consent judgment.

Plaintiffs argue that their rate of pay should be calculated by dividing the weekly salary rate by forty hours in light of the rebuttable presumption under the Fair Labor Standards Act ("FLSA") that a flat weekly salary is intended to cover 40 hours per week. Pl. Mem. at 1-2. Plaintiffs assert that such calculations reveal that Defendants have failed to pay Plaintiffs the legally mandated overtime rate. Defendants argue instead that the rate should be calculated by dividing the weekly salary rate by the hours actually worked, revealing instead that some weeks Plaintiffs were overpaid. Def. Mem. at 2-5.

The Court agrees with Plaintiffs and finds that Defendants have not overcome the presumption that a flat weekly salary is intended to compensate employees for forty hours of work per week. "Under both the FLSA and NYLL, . . . there is a presumption that such a weekly salary covers only the first forty hours, unless the parties 'intend and understand the weekly salary to include overtime hours at the premium rate.'" *Guallpa v. N.Y. Pro Signs Inc.*, 2014 WL 2200393, at *4 (S.D.N.Y. May 27, 2014) (quoting *Giles v. City of N.Y.*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)). "An agreement for a fixed weekly salary for more than 40 hours of work per week only complies with the FLSA and Labor Law if there is an explicit understanding between the employer and employee as to regular and overtime rates." *Amaya v. Superior Tile and Granite Corp.*, 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012). Here, the record is completely devoid of any evidence of an agreement or understanding between Plaintiffs and Defendants regarding what the weekly salary was intended to cover. Defendants have not even come close to rebutting the presumption, and accordingly the Court calculates Plaintiffs' damages at a rate

4

determined by dividing the weekly salary rate by forty.[5] Thus Plaintiffs are owed the amounts[6] reflected below in unpaid overtime wages.

### B. Liquidated Damages

The FLSA grants liquidated damages for violations of the overtime provision in an amount equal to that of actual damages. 29 U.S.C. § 216(b). While an exception exists for employers who acted in good faith, *id.* § 260, Defendants have not demonstrated the existence of good faith. To establish good faith, the employer "must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." *Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (internal citations and quotation marks omitted). Defendants argue that they acted in good faith because they had previously been sued by the Department of Labor and thus knew the FLSA requirements, and Jessie Wu testified that she attempted to follow the instructions of a DOL investigator. Tr. 68:18-25. But merely knowing the rules of the FLSA and allegedly attempting to meet them does not demonstrate good faith; indeed, it demonstrates the opposite. *See Solis v. Cindy's Total Care, Inc.*, 2012 WL 28141, ¶¶ 34-35 ("Defendants have not established that they acted in good faith in violating the FLSA. Quite the contrary: The defendants knew of the overtime pay and recordkeeping requirements of the FLSA following the Department of Labor's initial investigation. . . [B]y virtue of the outcome of the first investigation, [Defendant] is a recidivist as to FLSA violations,

---

[5] Defendants' argument regarding the fluctuating work week method of calculating damages is meritless, Def. Mem. at 4-5, because three of the five required factors that must be met for the fluctuating work week calculation to apply are not present here. The fixed salaries here fail to compensate Plaintiffs at or above the minimum wage (for two Plaintiffs), there is no clear mutual understanding of a fixed salary, and the fixed salary does not provide 50% overtime premium for all overtime hours worked. *See, e.g., Ayers v. SGS Control Servs., Inc.*, 2007 WL 646326, at *9 (S.D.N.Y. Feb. 27, 2007).

[6] For the weeks for which no records were provided, Plaintiffs substituted a number for each Plaintiff based on the Plaintiff's testimony. Although Defendants argue that there is no proof in the record that Plaintiffs worked these hours, the Court accepts the Plaintiffs' unrefuted testimony.

5

which is also inconsistent with a finding of good faith."); *accord Karic v. Major Auto. Cos. Inc.*, 992 F. Supp. 2d 196, 203-04 (E.D.N.Y. 2014).

The NYLL also authorizes liquidated damages unless the employer has shown good faith. N.Y. Lab. Law § 198(1-a). Although there is a split of authority on whether a plaintiff may recover liquidated damages under both the FLSA and the NYLL for the same violations during the same time period, courts in the Second Circuit have allowed for the simultaneous recovery of both forms of liquidated damages. *See Yu Y. Ho v. Sim Enters.*, 2014 WL 1998237, at *18-19 (S.D.N.Y. May 14, 2014); *accord Easterly v. Tri-Star Transport*, 2015 WL 337565, at *2 (S.D.N.Y. Jan. 23, 2015).

Before April 9, 2011, the NYLL allowed for liquidated damages recovery at a rate of 25% of unpaid wages. *See* 2010 N.Y. Sess. Laws Ch. 564 (S. 8380) (McKinney) (deleting the provision setting liquidated damages at 25% of actual damages). Since April 9, 2011, the NYLL has allowed for liquidated damages recovery at a rate of 100%. N.Y. Lab. Law § 663.

Accordingly, liquidated damages are applied as follows, when accounting for both FLSA and NYLL liquidated damages.

- Commencement of employment through December 21, 2009: 25%.
- December 22, 2009 through April 8, 2011: 125%.
- April 9, 2011 to conclusion of employment: 200%.

### C. Willfulness

Defendants' failure to demonstrate a good faith effort to comply with the dictates of the FLSA further impact Plaintiffs' damages calculations, because a showing of willfulness triggers a three-year statute of limitations period under the FLSA. *See* 29 U.S.C. § 255(a); *Galeana v. Lemongrass on Broadway Corp.*, 2014 WL 1364493, at *5-6 (S.D.N.Y. Apr. 4, 2014).

To show willfulness, a plaintiff must demonstrate that an employer "showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Yu G. Ke. v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1989)). As with the good faith exception discussed above, violations following previous Department of Labor investigations and adverse findings demonstrate willfulness. *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2d Cir. 1988) (previous findings of wage violations put defendants on notice and rendered subsequent violations "unquestionably willful"); *Banasiewicz v. Olympia Mechanical Piping and Heating Corp.*, 2012 WL 4472033, at \*4-5 (E.D.N.Y. Aug. 31, 2012) (finding labor law violations willful because of previous violations, plea, and restitution payments stemming from those earlier violations).

Plaintiffs here have demonstrated that Defendants' violations were willful. As discussed above with respect to the good faith exception for liquidated damages, Defendants were on notice of the FLSA's requirements in light of the Department of Labor investigation in 2009. Accordingly, Defendants were aware of the wage and hour requirements, and Jessie Wu's testimony that she attempted to comply with the NYLL and FLSA is insufficient to overcome Plaintiffs' showing of willfulness.

## D. Violations of Wage Notice and Wage Statement Provisions[7]

Prior to February 25, 2015, employers were required to provide employees with wage notices at the time of their hiring and, subsequently, annually. N.Y. Lab. Law. § 195(1)(a).[8]

---

[7] The provisions discussed below were recently amended, and these amendments became effective February 27, 2015. *See* 2014 N.Y. Sess. Laws Ch. 537 (A. 8106-C) (McKinney). Because Plaintiffs did not work for the periods covered by the amendments, the Court will apply the provisions and penalties in place at the time of employment. *See, e.g., Herrera v. Tri-State Kitchen & Bath, Inc.*, 2015 WL 1529653, at \*11 n.3 (E.D.N.Y. Mar. 31, 2015).
[8] *See* 2014 N.Y. Sess. Laws Ch. 537 (A. 8106-C) (McKinney) (deleting "and on or before February first of each subsequent year of the employee's employment with the employer" from N.Y. Lab. Law § 195(1)(a)).

7

This requirement went into effect on April 9, 2011, and allowed for recovery in the amount of

$50 per week with a cap of $2500. *See* 2014 N.Y. Sess. Laws Ch. 537 (A. 8106-C) (McKinney)

(amending N.Y. Lab. Law. § 198(1-b) to allow for $50 per day with a cap of $5000).

Likewise, the NYLL requires employers to provide employees with accurate wage

statements with each payment of wages. N.Y. Lab. Law § 195(3). Prior to February 25, 2015,

the failure to do so was a violation for which plaintiffs could receive $100 per work week in

damages, with a cap of $2500. *See* 2014 N.Y. Sess. Laws Ch. 537 (A. 8106-C) (McKinney's)

(amending N.Y. Lab. Law § 198(1-d) to allow for $50 in damages per day with a cap of $5000).

Defendants never provided Plaintiffs with wage notices or wage statements. With respect

to damages for wage notice violations, however, Defendants argue that Plaintiffs are not entitled

to damages for violations of these provisions because these provisions became effective after all

Plaintiffs had been hired. Def. Mem. at 5.

Although Section 195(1) required annual notices regardless of the time of hire, courts had

determined that "the plain language of the statute . . . confers a private right of action upon those

who do not receive their notice at the time of hiring, but not upon those who do not receive it on

or before February first of any subsequent year." *Guan Ming Lin v. Benihana N.Y. Corp.*, 2012

WL 7620734, at *8 (S.D.N.Y. Oct. 23, 2012); *accord Inclan v. N.Y. Hospitality Grp., Inc.*, 2015

WL 1399599, at *8 (S.D.N.Y. Mar. 26, 2015); *Yuquilema v. Manhattan's Hero Corp.*, 2014 WL

4207106, at *10-11 (S.D.N.Y. Aug. 20, 2014).[9] The case cited by Plaintiffs in support of their

argument that Plaintiffs are entitled to damages regardless of their time of hire does not stand for

---

[9] The Court notes that Plaintiffs failed to bring the Court's attention to this body of case law, in likely violation of New York Rule of Professional Conduct 3.3(a)(2), which requires attorneys to disclose adverse legal authority in the relevant jurisdiction which is not disclosed by opposing counsel. Defendants' counsel argued the point but included no case law to support the argument. Def. Mem. at 5. Nor did Plaintiff's attorney disclose that these provisions of the NYLL had been amended. The Court reminds Plaintiffs' counsel of its duty to comply with the rules of professional conduct.

this proposition—instead, it holds that those hired before April 9, 2011, may recover for weeks that they did not receive a wage notice when their wage rate changed after April 9, 2011. *Cuzco v. F & J Steaks 37th St. LLC*, 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014) ("Plaintiffs may maintain a cause of action on behalf of workers who did not receive a wage notice every time their wage rate changed after April 9, 2011."). Here, only L. Perez and Gonzalez had their wage rates change during the limitations period, and only Gonzalez's wage rate change occurred after April 9, 2011. *See supra* at 2. Accordingly, only Gonzalez is eligible to receive damages for violations of Section 195(1), and he is only entitled to recover $50 for the single violation.

The same time restrictions do not apply to violations of Section 195(3). *See Yuquilema*, 2014 WL 4207106, at *11. Plaintiffs are entitled to damages for Defendants' failure to provide wage statements with each payment of wages. Accordingly, Plaintiffs are entitled to damages for these violations as demonstrated below.

### E. Spread of Hours

Because the Court has ruled that Plaintiffs' rate of pay is to be determined by dividing their salary by forty hours, Plaintiffs were paid above the minimum wage and therefore are not entitled to spread of hours damages. *See* Pl. Reply Mem. at 3 (conceding spread of hours argument should the Court find in their favor on the calculation of the regular rate of pay).

### F. Pre-Judgment Interest

Plaintiffs request pre-judgment interest for their claims for unpaid wages under the NYLL, "up until the point where they recover under the FLSA." Pl. Mem. at 12. Defendants argue that prejudgment interest cannot be awarded when liquidated damages are awarded. Def. Mem. at 7.

9

Defendants' argument fails. "Prejudgment interest is not duplicative of liquidated damages under the NYLL, and therefore, plaintiffs are entitled to prejudgment interest on any compensatory damages awarded under the NYLL for which there is no corresponding award of liquidated damages under FLSA." *Tackie v. Keff Enters. LLC*, 2014 WL 4626229, at *5-6 (S.D.N.Y. Sept. 16, 2014) (citing *Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)). Plaintiffs have only requested prejudgment interest on that portion of compensatory damages for which FLSA liquidated damages are not recoverable. The Court awards prejudgment interest on Plaintiffs' NYLL claims prior to the start of the FLSA recovery period.

The N.Y. C.P.L.R. applies a statutory interest rate of 9% per year and instructs that interest should be computed "upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. §§ 5001(b), 5004. The Court agrees with Plaintiffs' calculations of prejudgment interest and awards it in the amount below.

## CONCLUSION

For the foregoing reasons, Plaintiffs are entitled to damages in the following amounts. The Court will direct the Clerk of Court to enter judgment in the amounts listed below once any motion for attorney's fees has been decided.[10]

Alberto Gonzalez:

- Unpaid overtime: $39,367.5

- Liquidated damages on unpaid overtime: $55,470.04

- Prejudgment Interest on unpaid overtime: $4423.2

---

[10] Plaintiffs refer to a "total damages chart" which they say includes attorney's fees and costs. Androphy Decl. ¶ 12(a). But Plaintiffs' counsel has not provided any calculations or briefing regarding attorney's fees. If Plaintiffs intend to seek attorney's fees, they are directed to file a motion by May 15, 2015. Defendants' response is due on May 29, 2015, and Plaintiffs' reply is due on June 5, 2015.

- Wage Notice violations: $50

- Wage Statement violations: $2500

- Total owed: $101,810.74

Humberto Perez:

- Unpaid overtime: $2611.2

- Liquidated damages on unpaid overtime: $3365.44

- Prejudgment interest on unpaid overtime: $196.11

- Wage Statement violations: $2500

- Total owed: $8672.75[11]

Ledia Perez:

- Unpaid overtime: $4863.19[12]

- Liquidated damages on unpaid overtime: $7016.24

- Prejudgment interest on unpaid overtime: $203.17

- Wage Statement violations: $2500

- Total owed: $14,582.60

---

[11] Plaintiffs' table, adjusted for the Court's denial of wage notice damages, indicates that $6206.55 is the total amount owed to H. Perez. The calculations submitted by Plaintiffs, however, and verified by the Court, demonstrate that $8672.75 is the total amount owed to H. Perez.

[12] Plaintiffs calculate the total unpaid wages for L. Perez at 4769.79. But Plaintiffs failed to include overtime due to L. Perez for the weeks of 9/20/2010-9/26/2010 and 5/28/2012-6/3/2012. Accordingly, the Court adjusts the amount owed to L. Perez to include unpaid overtime for these weeks, as well as the liquidated damages owed for these weeks.

Ali Muro:

- Unpaid overtime: $33,339.15

- Liquidated damages on unpaid overtime: $57,118.58

- Prejudgment interest on unpaid overtime: $238.14

- Wage Statement violations: $2500

- Total owed: $93,195.86


Dated: New York, New York          SO ORDERED
      April 24, 2015

                                      PAUL A. CROTTY
                                      United States District Judge